The next case is Pineda-Salgado v. Garland and that's submitted. And the next case for argument is Luis Perez-Camacho v. Garland. I cancel. Good afternoon, your honors. May it please the court. I'd like to reserve two minutes for rebuttal. Today, your honors, petitioner is asking this court to first recognize the legal error committed by the board in finding that petitioner's vacated conviction of his only deportable offense, being a legal permanent resident of the United States, should not be recognized for immigration purposes, or in other words, by the immigration authorities, while it is a proper vacatur in the state court. The first mistake that the board made in committing legal error is that the burden of proof in a motion to reopen is on the government to prove that the vacatur is not a proper vacatur for immigration purposes. The board ignored the NAF case, which clearly states that, and rather cited the Chavez board precedent. Does that make any difference here? Would that error be harmless? I mean, was there any evidence in the record that the conviction was vacated because it was unlawful? The minute order says that it was based, or the modification, it wasn't a vacatur, the modification to a misdemeanor was based on a stipulation by the parties that the district attorney would have accepted a plea for a misdemeanor if it had been offered, and that's all it says. So is there anything in the record that shows that the conviction was unlawful or invalid? With all due respect, Your Honor, it's not the petitioner's burden to prove that it's unlawful or invalid. The standard under the board precedent of Pickering is that rehabilitative or sympathy to immigration hardship-based dismissals, vacatures, are not recognized for immigration purposes. If I look at the record and I say it's clearly for immigration purposes, then there is nothing in the record that would change my mind. The statement, we have the statement that the reason that it was vacated was because had prior defense counsel asked for an alternative plea, that it would have been accepted. That's the basis. That's not rehabilitative. That's not for immigration purposes. It may also not be legal error. It may also not be constitutional, ineffective assistance of counsel or such. But I don't think, I think it would be to categorize that as rehabilitative or for immigration purposes. I think that flies in the face of reason. I think that would be intellectually dishonest to find that it would be rehabilitative or specifically for immigration purposes. And that's also ignoring the fact that the NAAF case is the government's burden. Respondent or petitioner was a legal permanent resident of the United States. It was their initial burden when proceedings started. It continues to be their burden on a motion to reopen in the NAAF case. The board committed legal error here. Let me ask you another question. The BIA had several alternative holdings in its opinion. One was that the motion to reopen was number and time barred and therefore would be denied. And then the BIA goes on to say that even if we deemed it to be timely, it would be denied because the modification of the conviction was not for, because the conviction was invalid. If we look at its first holding, that the motion to reopen was number and time barred and therefore denied, is there any basis why that holding of the BIA is erroneous? What I think I hear the court asking is about the equitable tolling. No, I'm asking about this ruling. Well, let me take that back, yes. If equitable tolling is the basis for saying that we should, that the BIA erred in saying it would be denied because it's number and time barred, then we should hear about the equitable tolling. Do you think that's the reason that ruling was erroneous? I think that, so I think if we have the legal error, that that served as an underlying and prejudiced the issue of equitable tolling. The legal error is only in connection with the holding that was timely. So, at first, the BIA says it's not timely. So, as far as time and number barred, it was outside of the 90 days, and it was also, I believe, the second motion to reopen, but equitable tolling can cure that, and I think the board made a mistake in its analysis of equitable tolling. They said, well, he waited 13 years to go seek this vacated judgment. Even if they operated it, even if it's a proper vacated judgment, he took too long to go get the vacated judgment, and the mistake there is, number one, I said the Farinas case, which is a 1967 Board of Immigration Appeals precedent where the petitioner-respondent waited 16 years, and there was no explanation for why he waited, and the reason I think that precedent is still relevant here is because all of the case law about equitable tolling is about two things that do not exist in this case, a change in the interpretation of the case law or ineffective assistance of counsel. And, for example, I said the Lana case, and that case is about a change in the case law. It's not about, in this case, we have new evidence. If we look at 8 CFR 1003.23B3, which is the code for motions to reopen in states, motions to reopen can be filed where new evidence that didn't exist at the time of the removal work. It comes about this new evidence that we filed was not in existence. It's good for equitable tolling. One of the requirements is you could have discovered this with due diligence, so you say this is new evidence, but why couldn't he have done that in the past 13 years after the final order? You can't discover new evidence that didn't exist. This evidence didn't exist. The order that we filed didn't exist, so I recognize that. Couldn't he have done that beforehand, though, instead of 13, 14 years later? Couldn't he have talked to the DA and tried to get a factual record done earlier? But, again, that should not be the standard here because it's new evidence. It's not in a different interpretation of the case law. For example, if he had gotten a vacated judgment and then waited 13 years to discover that evidence, then I could see the government's position. But he, as soon as he got this new evidence that was not in existence, not to mention that it's a state court order that should be given full faith and credit, he ran to the board. All of this precedent that's about equitable tolling is about a change in the interpretation of the case law or ineffective assistance of counsel. He's discovering the ineffective assistance of counsel. The district attorney, though, who then said he would have accepted a misdemeanor plea was around for those 13 years. So the availability of the evidence underlying the stipulation was there. I think that's what the BIA was pointing to when he said he waited 13 years to go and talk to the DA and get a joint stipulation to the court. Well, I still rely on the Freeman's case. And then I want to get to my last point, which I think is stronger than the equitable tolling issue, which is that the mistake in the board's analysis of the legal error that I already cited served as an underlying basis of the board's denial of su sponte reopening, quote, that modification, quote, modification, and they specifically referred to it as a modification and not an order that vacates the conviction, also does not represent the sort of exceptional situation that would justify su sponte reopening. It's not rehabilitative. It's not for immigration hardships. I just don't think it's fair to find that it would be for such, given the evidence that we have on the record. And that was an error underlying the board's failure directly under the Bonilla case to exercise su sponte discretion. So that was an abuse of discretion. And lastly, I just want to say I tried to file a supplemental authorities, but the ECF system was down. And I want to cite C&P Garland slip up 20-70050, which. You didn't submit that after the argument. I will do so, Your Honor. And. Proceed to the court, sir, and remodel. Please, Your Honor. Thank you. Okay. We'll hear from the government. Thank you, Your Honor. May it please the court. Rachel Browning for the respondent, U.S. Attorney General. In this case, the board recently concluded that the 2018 modification of petitioner's conviction. We're having trouble hearing you. You're going in and out of the audio. Sorry. Thank you. In this case, the board recently concluded that. Remediate a substantive or procedural defect in the prior. Can you hold the time? Can you go on the telephone, or can you connect otherwise? Because we cannot hear your. Understand your argument. You're going in and out. Just a second. Ms. Browning, do you see the telephone information on the email with the connection? I'm looking for it right now. I'm sorry. I didn't have my email connection up. I understand. Okay. Sorry. Okay. Oh, I see. Okay. There's like a bunch of numbers. I'm sorry. Let me find the email for you. It should have telephone information there for both. Yeah, there you go. Okay. And it would be. Okay. Okay. Okay. Okay. Okay. Okay. Ms. Browning, you're going to want to mute the microphone on your computer as well. All right. Can you give us a sentence or two? Make sure that you're coming through well. Okay. Can everybody hear me better this way? Yes. Thank you. Thank you, Bob. Sorry. You also might want to turn your speakers off on your computer just so that we don't get that reverberating through. Okay. Can everyone still hear me? Yes. Let's try it again. Okay. Sorry. I've done many of these. This has never happened. I apologize. As I was saying, the board's determination was based on two things. That the evidence did not establish that the modification remedied a substantive or procedural defect in the prior criminal proceedings. And because Petitioner waited more than 13 years after the entry of the removal order, and over 20 years after the conviction itself to seek the modification, he failed to act with reasonable diligence in pursuing relief to justify the equitable tolling of the time and number restrictions. And I want to emphasize the posture of this case. Petitioner was originally ordered removed in 2005 in absentia. And while he filed a motion to reopen that decision, the judge denied it, the board affirmed that denial, and then the order became final itself, and Petitioner did not petition for review of that order in the court. So the removal order stands. He is no longer a lawful permanent resident. Thus, when he sought reopening 13 years later, it was his burden to establish that he warranted relief in an exercise of discretion. And so when it comes to establishing equitable tolling, if his argument is that, you know, but for my prior counsel's inefficiency and effectiveness, you know, I would have pled to this lesser charge, I never would have been removable, then the question does become, did he act with diligence in making that discovery and then pursuing relief? And the board's position is that he doesn't explain, you know, what he did in the interim between, you know, in the 21 years that last between the conviction itself and the motion to reopen, or within the 13 years of the order. Arguably, you know, the moment he was charged with removability for this crime and then ordered removed on the basis of this crime, that should have given him notice that, you know, something was right, that something in the criminal proceeding may very well have gone differently or should have gone differently. And if that's his position, then he does need to establish why equitable tolling should apply because that's a significant lapse in time. As is of course recognized in Bonilla, petitioner in that case waited six years before trying to remedy the grounds of his deportation. And the court referred to that, you know, as a substantial lapse in time. This is more than twice that length of time. So I think the board's decision with respect to equitable tolling is perfectly in keeping with the case law of this court and what's required of petitioners in this type of procedural posture. What do we do with the issue that the PIA said the burden, that even if the motion to reopen were timely, the petitioner didn't carry his burden of showing the reason for the modification of the conviction. Whereas we have said in our case law that the burden is on the government. If the government is in a position of having to establish removability, then it would be the government's burden to establish. And in the face of a vacated or expunged conviction, then the government would have the burden of establishing the reason for the expungement or vacature. In this case, you have a motion to reopen that's untimely and number barred. Therefore, if the petitioner's position is that he's no longer, you know, removable for whatever reason, then the board needs some evidence to go on as to the reason. Because primarily the case law of this court is that an expunged or vacated conviction is still a conviction for immigration purposes. And there's a long line of cases in this court establishing that. And so on this record, there's simply not enough there to state why the conviction was modified. And in a case we point out in our brief, Gomez-Almerenga v. Sessions, which is a fairly recent case, the board came to the ‑‑ sorry, the court came to the conclusion that a similarly vacated conviction under the same statute, California Penal Code 1385, was insufficient evidence to support reopening. Because under that provision, there could be any number of reasons why a judge would agree to modify the conviction. And in that case, the court found that was just simply not enough evidence. And so they denied the petition for review and agreed with the board's assessment. And this is very similar. It's the same statute. The fact that defense counsel might have counteroffered and the prosecution might have agreed to that, there could be any number of reasons for that sort of modification that have nothing to do with substantive or procedural issues or constitutional issues during those proceedings. If it was the government's burden on that issue, I'm struggling a little bit with how to find that you met it. Because there's not much from the government. With respect to the modification? Right, the reason. Well, so I guess I don't accept that in this premise, that in this case, it would be the government's burden. I mean, you've got a 13- I'm not sure what the government. So, I mean, if you notice from the minute order, the petitioner's criminal case file was destroyed in 2014. I mean, this is an old case. And so if he's coming forward later and saying, oh, but it's vacated. I mean, there just should have been more. So I don't. I believe the government met its burden because there's simply nothing in the record. And the default is that a vacated conviction remains a conviction for immigration purposes. And this paper simply says that, you know, in hindsight, maybe there would have been a different plea agreement. And that's. I mean, so on that record, I don't see how the court can draw the conclusion that this was anything but ameliorative, rehabilitative, you know, or done for immigration purposes, especially given the latency between the conviction itself and when this was sought. And assuming the court agrees with that position, because the board's decision doesn't rest on any misapprehension, a misunderstanding, or a legally erroneous conclusion, the court lacks jurisdiction to review the sua sponte denial. Recognizing that under BNEA, the court does have jurisdiction to review just the discrete determination of whether, you know, the board's decision rested on a misapprehension of the law, we maintain here that there was no such misapprehension. The board, you know, properly assessed the evidence that was before it and made a perfectly reasonable conclusion on the basis of, you know, the modification itself and on petitioner's failure to act within 13 years, you know, more than 13 years after the original decision. So I believe I've covered everything I wanted to say. If there are no further questions, I'll rest on the arguments in our brief. And again, I apologize for the mishap with the audio.  Thank you. Thank you. And, yeah, if you have a minute or so left for rebuttal. Thank you, Your Honors. I just want to point out that in BNEA, he waited six years to file the motion to reopen, not six years to file something else or seek whatever. He waited six years to file the motion to reopen. And that's why I'm asking the court, let's draw a line between a change in interpretive case law, ineffective assistance of counsel, and new evidence that didn't exist. How can somebody possibly file a motion to reopen when that evidence doesn't exist? Also, where does it say a conviction remains a conviction for immigration purposes as a default? That's not the standard under NAF. And lastly, I'll just say we can't go behind the state court's orders and diligence. We have to rest on the full faith and credit. Thank you, Your Honors. Okay. Thank both sides for their arguments. That's the case of Paris Camacho v. Garland is submitted.
judges: IKUTA, LEE, FORREST